**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DENYA McGEE,                              :
                                          :
      Plaintiff,                          :
                                          :
v.                                        :      No. 3:03CV1761(DJS)
                                          :
BEVERLY GREEN, KATHLEEN BAHE,             :
and CATHLEEN SIMPSON,                     :
                                          :
      Defendants.                         :

**MEMORANDUM OF DECISION**

On October 14, 2003, plaintiff Denya McGee filed this action
alleging that defendants, Beverly Green, Kathleen Bahe, and
Cathleen Simpson, who were employees of the State of Connecticut
Department of Children and Families ("DCF"), violated her rights
secured by the First Amendment to the U.S. Constitution and her
right to equal protection under the law, as guaranteed by the
Fourteenth Amendment to the U.S. Constitution, in violation of 42
U.S.C. § 1983 and § 1985.  On April 15, 2005, pursuant to Rule
56(b) of the Federal Rules of Civil Procedure, defendants filed a
motion for summary judgment.  (See Dkt. # 48).  For the reasons
set forth herein, defendants' motion is **GRANTED**.

**I. FACTS**

Plaintiff Denya McGee began her employment as a Social
Worker trainee with the State of Connecticut Department of
Children and Families ("DCF") in October of 1997.  In the early
part of 1998, McGee became a Social Worker.  McGee worked in six

different units in DCF's Bridgeport, Connecticut office from 1997
through 2003.  In May of 2000, McGee asked to be transferred to
the Foster Care and Adoptions Unit ("FASU") in Bridgeport,
Connecticut.  Her transfer was accepted, and she was placed under
the supervision of Jane Guckgert, Social Worker Supervisor; Annie
Christy, Program Supervisor; and Kathleen Bahe, Program Director.
During McGee's tenure in FASU, there were several changes in her
Social Worker Supervisor, but Annie Christy, until her retirement
in June of 2003, and Kathleen Bahe remained her ultimate
supervisors throughout the relevant time period.

In late 2002, Beverly Green received a promotion to Social
Worker Supervisor and was transferred to FASU in Bridgeport.
When McGee learned that she would soon be assigned to report to
Green, she expressed concern to her current Social Worker
Supervisor, Achara Sessler, that the imminent transfer would
result in a conflict of interest.  Specifically, McGee questioned
the propriety of reporting to Green while McGee was assigned to
supervise Green's sister, Ms. B,[1] who was a DCF foster parent.
McGee and Sessler had a meeting with Christy where McGee voiced
her concerns about the matter, and Christy decided to transfer
Ms. B's case and advised McGee to work directly with her

---

[1] Because only her relation to Green is relevant for the
purpose of deciding this motion, there is no need to refer to
this individual by her actual name and risk compromising any
interest related to the foster care of a child.

regarding this case until it was reassigned or closed.

According to McGee, her concerns were realized when she was compelled to send a written reprimand to Ms. B.  On February 5, 2003, McGee prepared a letter to be sent to Ms. B explaining some violations of policy she had committed with respect to a foster child in her care, suggesting remedial counseling, and informing her that a new Support Social Worker from the New Haven Office would now take over her case.  Approximately a month later, McGee found this letter on Sessler's desk, and then sent the letter with the original date of February 5, 2003 after she and Christy executed it.  Ms. B confronted McGee over the telephone on March 13, 2003 concerning the letter, and then complained to DCF administration regarding the same.  On March 31, 2003, Kathleen Bahe sent a letter to Ms. B indicating that she was in receipt of the letters Ms. B sent to the Commissioner and explaining that McGee's letter was justified because Ms. B needed to be informed of certain issues.  Bahe concluded that the letter was sent in accordance with DCF policy and concluded that, after her review of the file, Ms. B did, in fact, violate DCF policy.  Bahe also noted that, since no licensing action was taken, there would be no formal review or hearing regarding Ms. B's conduct.  Bahe also assured Ms. B that all future correspondence would be sent in a more timely manner.   McGee claims there was never a follow-up to her regarding this letter.

Apparently, McGee was not satisfied with the resolution of her concerns about the conflict of interest involving Green. McGee again expressed her displeasure regarding Christy's solution and believed that a conflict of interest still existed despite the fact that McGee never discussed the case with Green. McGee believed that once she was transferred to Green's unit, Green would have access to all her files, including all communications with Ms. B via the Computer/LINK Narrative. Further, after McGee's transfer, Ms. B told McGee that Green tells her how to interact with DCF, and Ms. B would know if McGee was doing her job because Green would tell her.  McGee also claims that Green made veiled references to Ms. B, which McGee believes were directed at her, in unit meetings.  On March 19, 2003, after a meeting with Ms. B regarding McGee's letter, McGee sent an email to Christy and Bahe requesting a transfer from Green's unit because of the conflict and other issues.  Then, by early May, Ms. B's case was closed, and the foster child in her care was removed by another DCF unit from Ms. B's home for reasons unrelated to McGee's work.  Nevertheless, McGee believed that Green harbored ill will toward her because of McGee's work in Ms. B's case.

McGee claims that she had expressed her discomfort from working with Green to her supervisors on a regular basis.  McGee not only informed Bahe of her discomfort, but McGee also stated

it to Cathleen Simpson and Christy as well in written
communications dated March 19, 2003, May 5, 2003, May 19, 2003,
and June 12, 2003.  In addition to the perceived conflict of
interest, McGee alleged that, on many occasions, Green would yell
and intimidate her in front of her co-workers.  McGee also
alleged that Green would yell and intimidate other people working
with her in the unit, whether the person was present or not.
McGee witnessed several employees becoming visibly upset in her
presence when Green would lash out at them.  Several times, McGee
would tell Green if she needed to discuss a situation with a
particular individual it would be best to do it in her office
behind closed doors.  McGee believes that Green did not like
being told how she should act.

     McGee's complaints were the impetus for an internal
investigation of Green's conduct.  On May 5, 2003, McGee sent an
email to Christy, Bahe, Thomas Bisch, and Simpson requesting a
reassignment to another unit.  According to McGee, Green created
a hostile work environment, and Green's behavior toward McGee was
in retaliation for her treatment of Ms. B.  Also on May 5, 2003,
Simpson emailed Green a copy of McGee's message and told her that
an administrative investigation had commenced. On May 19, 2003,
McGee sent another email to Simpson outlining specific incidents
and concerns with respect to the hostile work environment that
Green allegedly created.  After Simpson did not find a basis to

-5-

take action on McGee's administrative complaint, McGee filed a
grievance against Green on June 26, 2003, alleging that she
created a hostile work environment by subjecting McGee to public
embarrassment in front of co-workers, acting in a threatening and
condescending manner, and using harsh and disrespectful language
with McGee.

While McGee's grievance was pending, she and Green clashed
about her job performance.  On June 23, 2003, Green sent McGee a
memorandum of formal counseling admonishing her for not keeping
her supervisors apprised of the status of an appointment with a
client.  On August 26, 2003, Green sent McGee a memo commenting
on her excessive use of sick leave.  Green explained in her memo
that unless she had approved time under the Family Medical Leave
Act, she was subject to being placed on a medical certificate
requirement, which would require a doctor's signature for
approved absences.  McGee replied back that her records were
inaccurate and that she had requested her records and other
information to verify her time.  In September of 2003, Green sent
an email to McGee regarding her job performance expectations,
specifically regarding typing her statistics because Green could
not read her handwriting.  McGee contends that Green's criticism
was unfounded and unfair.

During this time, in July or August of 2003, Simpson
investigated complaints against McGee.  Bahe and Green alleged

that McGee made excessive and inappropriate use of her state telephone and computer.  Also, Bahe alleged that McGee requested a foster parent to write a letter on McGee's behalf regarding her problems at work.  Simpson investigated and found that McGee did not misuse her computer, but she did find that over a four-month sample period, McGee made excessive personal use of her phone to call her daycare provider.  Simpson also found that McGee's request to the foster parent to write a letter on her behalf was inappropriate and showed poor judgment.  On August 28, 2003, McGee received a letter from Simpson indicating her findings regarding misuse of state equipment and inappropriate conduct with a client.  A pre-disciplinary hearing was set for September 11, 2003, and McGee was informed of her right to union representation and that disciplinary action to and including dismissal could be imposed.

The hearing took place on September 11, 2003, with McGee, Sandy Dearborn, who was the union president, Elizabeth Anderson, who was a union representative, Simpson, and Bahe present. Simpson made the first presentation regarding McGee's misuse of state equipment, which Dearborn rebutted.  McGee also offered to pay for the personal telephone usage.  McGee's request for a letter from a client was not discussed.  After the presentations, the parties separated, and Dearborn then began negotiating with Simpson and Bahe.  Dearbon explained to McGee that Simpson had

-7-

already spoken to her supervisor, Wanda Esterella, about termination, and that either McGee would negotiate an agreement where she would leave the Bridgeport FASU unit or would lose her job.  McGee agreed to leave FASU, to transfer to another office, to forgo the grievance against Green, and to receive a ten-day suspension without pay.  Even though McGee was reluctant to agree to these terms, and was under what she perceived to be undue pressure from DCF to accept them, Dearborn told her that she needed to agree in order to save her job.

On September 12, 2003, McGee's attorney sent a letter to Simpson purporting to revoke the Stipulated Agreement as invalid. Simpson rejected this claim, and, on September 15, 2003, directed McGee to report to Ann Steers in FASU for two weeks until she could be transferred to another unit on October 1, 2003.   McGee went on maternity leave at the end of November of 2003 and came back to work in July of 2004.  While McGee was on maternity leave, she requested a transfer to the permanency unit in the New Haven office, which was accepted.  McGee also tried to become part of the FASU unit in New Haven, but although there were spots available, the program director, Shirley Brinkly, told McGee she could not fill any of the spots because DCF was contemplating privatizing FASU.

## II.  DISCUSSION

McGee alleges that defendants imposed discipline upon her in

retaliation for her protected speech regarding the conflict of

interest involving Green.  McGee also claims that defendants'

decision to impose discipline was irrational in view of

defendants' failure to impose discipline upon similarly situated

individuals.  Defendants claim that their decision to discipline

McGee was not the product of illegal retaliation or otherwise

irrational.

## A.   STANDARD

A motion for summary judgment may be granted "if the

pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show

that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  Summary judgment is appropriate if, after

discovery, the nonmoving party "has failed to make a sufficient

showing on an essential element of [its] case with respect to

which [it] has the burden of proof."  Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986).  "The burden is on the moving party 'to

demonstrate the absence of any material factual issue genuinely

in dispute.'"  American Int'l Group, Inc. v. London Am. Int'l

Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v.

Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir.

1975)).  A dispute concerning a material fact is genuine "'if

evidence is such that a reasonable jury could return a verdict

for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist.,
963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must view all
inferences and ambiguities in a light most favorable to the
nonmoving party.  See Bryant v. Maffucci, 923 F.2d 979, 982 (2d
Cir. 1991).  "Only when reasonable minds could not differ as to
the import of the evidence is summary judgment proper."  Id.

### B. FIRST AMENDMENT RETALIATION

McGee claims that defendants disciplined her in retaliation
for her speaking out on matters of public concern in violation of
the First Amendment to the U.S. Constitution.  She argues that
her commentary regarding the conflict of interest created when
Green became her supervisor was defendants' motivation for
imposing discipline upon her, and that she was therefore denied
rights to which she is entitled pursuant to 42 U.S.C. § 1983.

A public employer cannot discharge or retaliate against an
employee for the exercise of the employee's First Amendment
rights.  See Perry v. Sinderman, 408 U.S. 593, 597 (1972).  Thus,
in Pickering v. Board of Education, 391 U.S. 563 (1968), the
Supreme Court struck a balance between the right of the employee
to speak and the employer's interest in effectively conducting
its affairs.  "The Pickering test involves a two-step inquiry:
first, a court must determine whether the speech which led to an
employee's discipline relates to a matter of public concern; and,

-10-

second, if so, the balance between free speech concerns is

weighed against efficient public service to ascertain to which

the scale tips." Melzer v. Board of Education of City School

Dist. of City of New York, 336 F.3d 185, 193 (2d Cir. 2003).  To

succeed on her First Amendment claim, McGee "must demonstrate by

a preponderance of the evidence that the speech at issue was

protected, that she suffered an adverse employment action, and

there was a causal connection between the protected speech and

the adverse employment action." Blum v. Schlegal, 18 F.3d 1005,

1010 (2d Cir. 1994).

   The threshold issue is whether McGee's speech relates to

matters of public concern such that it is worthy of First

Amendment protection.  "Pickering's balancing test applies only

when the employee speaks 'as a citizen upon matters of public

concern' rather than 'as an employee upon matters only of

personal interest.'" Harman v. City of New York, 140 F.3d 111,

117 (2d Cir. 1998) (quoting Connick v. Myers, 461 U.S. 138, 147

(1983)). "When employee expression cannot be fairly considered as

relating to any matter of political, social, or other concern to

the community, government officials should enjoy wide latitude in

managing their offices, without intrusive oversight by the

judiciary in the name of the First Amendment." Connick, 461 U.S.

at 146.  As such,

> when a public employee speaks not as a citizen upon
> matters of public concern, but instead as an employee

> upon matters only of personal interest, absent the most
> unusual circumstances, a federal court is not the
> appropriate forum in which to review the wisdom of a
> personnel decision taken by a public agency allegedly
> in reaction to the employee's behavior.

Id. at 147.  "Whether an employee's speech addresses a matter of

public concern is a question of law for the court to decide,

taking into account the content, form, and context of a given

statement as revealed by the whole record."  Lewis v. Cowen, 165

F.3d 154, 163 (2d Cir. 1999).

McGee's speech is not protected by the First Amendment

because she spoke as an "employee upon matters only of personal

interest."  Connick, 461 U.S. at 147.  McGee argues that she

spoke on matters of public concern because she raised a conflict

of interest that violated DCF regulations and therefore could

conceivably have compromised the quality of foster care provided

to children committed to DCF's supervision.  The substance of

McGee's complaints themselves, however, does not reflect a desire

to advance a public interest, but rather reflects McGee's

personal disapproval of Green's supervision.  Further, Christy's

resolution of the conflict conformed with DCF regulations and

mitigated any negative effect on the welfare of the foster child

by insuring that Green would never be in a position to take

action with respect to Ms. B.   Therefore, with no potential for

an adverse impact upon the welfare of a child or the foster care

system in general, there is no nexus between McGee's complaints

and the public interest.  McGee's complaints do not address

matters of concern to the public, but rather her own personal

discomfort with working for Green, which she feared would be

exacerbated by her continued supervision of Ms. B notwithstanding

resolution of the potential conflict.  Although the situation was

awkward for McGee, her complaints do not raise any issue of

concern to the public.

McGee's complaints are not significant to the public simply

because she works for an organization with a sensitive public

mission.  "To presume that all matters which transpire within a

government office are of public concern would mean that virtually

every remark--and certainly every criticism directed at a public

official--would plant the seed of a constitutional case."  Id. at

149.  Although, in some instances, problems in a public workplace

may be intrinsically significant enough to warrant public

attention, the matters about which McGee has spoken are not of

the character expected to be of special importance to the public

at large.  Cf. Nichol v. ARIN Intermediate Unit 28, 268 F. Supp.

2d 536, 558 (W.D. Pa. 2003) ("On the other side of the public

concern coin [from comments upon matters outside the issues of

the workplace], and presenting more complexity, are employees'

comments directed internally at issues in or affecting the

workplace, ranging from idle office gossip and chit-chat (usually

not public concern speech) to comments about safety, performance,

corruption and other such larger issues of general interest to

the public (usually deemed to be matters of public concern).").

Defendants' motion is therefore granted with respect to McGee's §

1983 and § 1985 retaliation claims.

### C.   EQUAL PROTECTION

McGee claims that defendants violated her right to equal

protection under the law by imposing an disproportionately harsh

sanction upon her for her conduct described in Simpson's

investigative report.    The Fourteenth Amendment to the United

States Constitution provides that "no state shall . . . deny to

any person within its jurisdiction the equal protection of the

laws," and is "essentially a direction that all persons similarly

situated should be treated alike."  City of Cleburne, Texas v.

Cleburne Living Center, 473 U.S. 432 (1985).  Traditionally,

equal protection claims were premised on the idea that the

plaintiff was a member of a protected class.  The Supreme Court

has held, however, that a plaintiff need not be a member of a

traditionally "protected class" in order to allege an equal

protection violation.  See Village of Willowbrook v. Olech, 528

U.S. 562, 564 (2000).  Instead, a "class of one" may maintain an

equal protection claim "where the plaintiff alleges that []he has

been intentionally treated differently from others similarly

situated and that there is no rational basis for the difference

in treatment."  Id.

"In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high."  Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005).  As such, a plaintiff who brings a "class of one" claim must prove that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake."  Id. at 105.

McGee has not presented sufficient evidence to bring her equal protection claim before a jury.  McGee, citing several examples, claims that other employees were not disciplined for misusing state equipment.  The undisputed evidence, however, does not support the conclusion that no rational factfinder could find a basis to treat these employees and McGee differently because Simpson found that McGee had improperly solicited a letter from a foster parent interceding in a dispute McGee was having with Green regarding an appointment.  As such, a rational person could determine that the combination of infractions for the misuse of the state telephone and the improper solicitation of a letter from a client was a principled reason to treat McGee differently

-15-

than others who had only misused state equipment in a manner similar to McGee.  Defendants' motion is granted with respect to McGee's equal protection claim.

### D. STATE LAW CLAIMS

Because judgment shall enter in favor of defendants on McGee's federal claims, McGee's only remaining claim is that defendants inflicted emotional distress upon her.  "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  Castellano v. Board of Trustees of the Police Officers' Variable Supplements Fund, 937 F.2d 752, 758 (2d Cir. 1991) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).  "If it appears that the federal claims . . . could be disposed of on a motion for summary judgment under F.R.Civ.P. 56, the court should refrain from exercising pendent jurisdiction absent exceptional circumstances."  Kavit v. A.L. Stamm & Co., 491 F.2d 1176, 1180 (2d Cir. 1974).  For these reasons, McGee's state claim shall be dismissed without prejudice.

## III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (dkt. # 48) is **GRANTED.** Judgment shall enter in favor of each defendant on Counts One, Two and Three of the Complaint; Count Four is **DISMISSED without prejudice.**  The Clerk of the Court shall close this file.

So ordered this 30th day of March, 2006.


**/s/DJS**

_____
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**